IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

JOSHUA R. MILLER,          *
                               *
     Plaintiff,        *    CIVIL ACTION NO. 15-00323-B
                               *
vs.                      *
                               *
CAROLYN W. COLVIN,      *
Commissioner of Social     *
Security,             *
                               *
     Defendant.        *

**ORDER**

Plaintiff Joshua R. Miller (hereinafter "Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security denying his claim for a period of disability, disability insurance benefits, and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*, and 1381, *et seq.*  On June 13, 2016, the parties consented to have the undersigned conduct any and all proceedings in this case.  (Doc. 23).  Thus, the action was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  Upon careful consideration of the administrative record and the memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner be **AFFIRMED.**

I. **Procedural History**

Plaintiff filed his applications for benefits in December 2013. (Tr. 258, 262). Plaintiff alleged that he has been disabled since May 11, 2011, based on "PTSD, TBI [traumatic brain injury], neck, back, injuries, shoulder, migraines."[1] (Id. at 287).

Plaintiff's applications were denied and upon timely request, he was granted administrative hearings before Administrative Law Judge Katie H. Pierce (hereinafter "ALJ") on June 17, 2014, and October 14, 2012. (Id. at 37, 63). Plaintiff attended both hearings with his counsel and provided testimony related to his claims. (Id. at 39, 67). Also appearing and testifying at the second hearing was a vocational expert ("VE") and a medical expert ("ME"). (Id. at 75, 89). On December 19, 2014, the ALJ issued an unfavorable decision finding that Plaintiff is not disabled. (Id. at 32). The Appeals Council denied Plaintiff's request for review on June 3, 2015. (Id. at 1). Therefore, the ALJ's decision dated December 19, 2014, became the final decision of the Commissioner.

Having exhausted his administrative remedies, Plaintiff timely filed the present civil action. (Doc. 1). The parties

---

[1] Plaintiff has raised no issue on appeal regarding the ALJ's findings related to any of his physical impairments. (Doc. 13). Therefore, the Court's discussion is limited to Plaintiff's mental impairments.

waived oral argument on June 13, 2016 (Doc. 22), and agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.   Issues on Appeal

1. **Whether the ALJ erred in rejecting the opinion of one-time examining psychiatrist, Dr. Anita Nusbaum, M.D., while assigning great weight to the opinions of non-examining psychological experts, Dr. John Davis, Ph.D., and Dr. Donald E. Hinton, Ph.D.?**

2. **Whether substantial evidence supports the ALJ's mental RFC assessment for a range of medium work with the stated nonexertional restrictions?**

3. **Whether the ALJ erred in failing to find Plaintiff's PTSD to be a severe impairment?**

## III.  Factual Background

Plaintiff was born on March 18, 1980, and was thirty-three years of age at the time of his second administrative hearing on October 14, 2014. (Tr. 63, 282). Plaintiff graduated from high school and attended two years of college. (Id. at 288). While in the military from 2006 to 2013, Plaintiff worked as a truck driver. (Id. at 68). Prior to serving in the military, Plaintiff worked as a truck driver and car salesman in 2001 and as an iron worker rigger in 2000. (Id. at 68-69).

At his hearing, Plaintiff testified that he was involved in an explosion in Afghanistan in 2011 when an IED exploded

underneath his truck.  (Id. at 51).  Plaintiff claims that as a result of the explosion, he has the severe impairments of PTSD, traumatic brain injury, injuries to the neck, back, and shoulder, and migraine headaches.  (Id. at 73).  At his hearing, Plaintiff testified that his "biggest problem" is headaches, which he has daily, and that he also has pain, problems with his back, and trouble concentrating.  (Id. at 51-52, 71-72). According to Plaintiff, he goes to the VA for mental health treatment about once a month.  (Id. at 69).  On March 28, 2014, Plaintiff reported that he was taking no medications for his conditions.  (Id. at 316).

Plaintiff testified that he lives with his mother.  (Id. at 55).  In a Function Report dated January 27, 2014, Plaintiff stated that he takes care of his mother (id. at 306); he has no problems with personal care, nor does he need reminders for personal care (id.); he has a pill planner to remind him to take his medicine (id. at 307); he prepares his own meals (id.); he does laundry and small chores (id.); he goes out alone and drives[2] (id. at 308); and he shops and handles all of his own finances (id.).  Plaintiff also reported that he avoids

---

[2] At the hearing, Plaintiff testified that his drivers license is currently suspended.  (Id. at 53, 71, 1030).  According to Plaintiff, he has had three DUI's; he last drank alcohol in January of 2014; and he last used marijuana in March of 2014. (Id. at 47-48).

authority figures and that he was released from the Army because of problems getting along with people (id. at 311).   Plaintiff also indicated that stress makes him angry and depressed. (Id.).

## IV.  **Analysis**

### A.   **Standard of Review**

In reviewing claims brought under the Act, this Court's role is a limited one.   The Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct legal standards were applied.[3]   Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).   A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.   Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).   The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence.   Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding substantial evidence is defined as "more than a scintilla, but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion.").   In determining whether substantial

---

[3] This Court's review of the Commissioner's application of legal principles is plenary. Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

evidence exists, a court must view the record as a whole, taking into account evidence favorable, as well as unfavorable, to the Commissioner's decision. <u>Chester v. Bowen</u>, 792 F. 2d 129, 131 (11th Cir. 1986); <u>Short v. Apfel</u>, 1999 U.S. Dist. LEXIS 10163, *4 (S.D. Ala. June 14, 1999).

**B.   Discussion**

An individual who applies for Social Security disability benefits must prove his or her disability. 20 C.F.R. §§ 404.1512, 416.912. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); <u>see also</u> 20 C.F.R. §§ 404.1505(a), 416.905(a). The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven his disability.[4] 20 C.F.R.

---

[4] The claimant must first prove that he or she has not engaged in substantial gainful activity. The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments. If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience. If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant work. <u>Jones v. Bowen</u>, 810 F.2d 1001, 1005 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the

§§ 404.1520, 416.920.

In the case *sub judice*, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since May 11, 2011, the alleged onset date, and that he has the severe impairments of cervical spondylosis, degenerative joint disease of the right shoulder, late effects of traumatic brain injury vs. psychotic disorder including speech difficulties, headaches, anxiety, attention deficit hyperactivity disorder, memory loss, and alcohol dependence.[5]   (Tr. 21).   The ALJ further found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any of the listed impairments[6] contained in 20 C.F.R. Part 404, Subpart P, Appendix

---

examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history.  Id.  Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history.  Sryock v. Heckler, 764 F.2d 834, 836 (11th Cir. 1985).  If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled.  Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999).  See also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

[5] The ALJ found Plaintiff's PTSD to be non-severe.  (Tr. 21-22).

[6] The ALJ found that Plaintiff has only a "mild" restriction in activities of daily living; "moderate" restrictions in social

1.  (Id. at 22).

The ALJ concluded that Plaintiff retains the residual functional capacity (hereinafter "RFC") to perform a range of medium work, with the following nonexertional restrictions: Plaintiff "is able to understand to carry out 'detailed but involved'[7] written or oral instructions involving a few concrete variables in or from standardized situations; can maintain attention/concentration for up to 2 hours at a time; can never have contact with the public and only occasional contact with coworkers and supervisors; can occasionally adapt to minimal changes in the work setting or routine; can perform goal oriented work, but not production paced work."[8]  (Id. at 24).

---

functioning and concentration, persistence, or pace; and no episodes of decompensation. (Tr. 23-24).

[7] The Court notes that, at Plaintiff's hearing, the ALJ posed a hypothetical to the vocational expert describing an individual who would be able to understand, to carry out "detailed but uninvolved written or oral instructions" involving a few concrete variables in or from standardized situations. (Tr. 90) (emphasis added).  Yet, in her RFC assessment, the ALJ stated that Plaintiff could perform work involving "detailed but involved written or oral instructions. . . ."  (Id. at 24)(emphasis added).  Whether the ALJ's use of the term "involved," as opposed to "uninvolved," was a typographical error is of no moment.  The Court has determined that the ALJ's RFC assessment for detailed work (whether including "involved" or "uninvolved" written and oral instructions) constitutes error; however, for the reasons explained herein, that error is harmless.

[8] The ALJ also assigned certain exertional limitations that are not at issue here. (Tr. 24).

The ALJ also determined that while Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, his statements concerning the intensity, persistence and limiting effects of the alleged symptoms were not entirely credible for the reasons explained in the decision. (Id. at 25).

The ALJ found that Plaintiff is unable to perform his past relevant work. (Id. at 30). However, utilizing the testimony of a VE, the ALJ concluded that Plaintiff is able to perform jobs such as "hand packager," "kitchen helper," and "poultry farm laborer" all of which are classified as medium and unskilled. (Id. at 31). Thus, the ALJ concluded that Plaintiff is not disabled. (Id. at 32).

The Court now considers the foregoing in light of the record in this case and the issues on appeal.

### 1.   Issues

**A. Whether the ALJ erred in rejecting the opinion of one-time examining psychiatrist, Dr. Anita Nusbaum, M.D., while assigning great weight to the opinions of non-examining psychological experts, Dr. John Davis, Ph.D., and Dr. Donald E. Hinton, Ph.D., and whether substantial evidence supports the ALJ's mental RFC assessment for a range of medium work with the stated nonexertional restrictions?[9]**

---

[9] Because these two issues are so closely related, the Court considers them together.

In this case, Plaintiff argues that the ALJ erred in rejecting the opinion of one-time examining psychiatrist, Dr. Anita Nusbaum, M.D., in a Mental Disorders Questionnaire form dated March 7, 2014, that Plaintiff has a "total occupational and social impairment" based exclusively on an "unspecified" "psychotic disorder." (Tr. 1091-92; Doc. 13 at 12-13). Plaintiff further argues that the ALJ erred in giving great weight to the opinions of non-examining State Agency psychologist, Dr. Donald E. Hinton, Ph.D., and non-examining medical expert, Dr. John Davis, Ph.D. (Tr. 75-78, 96, 104-09, 1091-92; Doc. 13 at 10-13). Plaintiff also argues that the ALJ erred in finding that Plaintiff has the RFC to perform a range of medium work, including work involving "'detailed but involved' written or oral instructions." (Doc. 13 at 2-6).

The Commissioner counters that the medical evidence does not support Dr. Nusbaum's opinion, and, to the contrary, that Dr. Nusbaum's opinion is inconsistent with the substantial medical evidence in the case. Thus, her opinion was properly discredited. (Doc. 20 at 8-9). The Commissioner further argues that the ALJ properly credited the opinions of Dr. Hinton and Dr. Davis. (Id.). Finally, the Commissioner argues that substantial evidence supports the ALJ's RFC assessment in this case.

Having carefully reviewed the record in this case, the Court finds, for the reasons discussed herein, that: (1) the ALJ had good cause to discredit the opinion of Dr. Nusbaum that Plaintiff has a "total occupational and social impairment," as that opinion is inconsistent with the substantial evidence in the case; (2) the ALJ properly assigned great weight to the opinions of non-examining State Agency psychologist Dr. Hinton, as his opinions did not conflict with the opinions of any credible examining medical source; (3) the ALJ erred in assigning great weight to the opinion of non-examining medical expert Dr. Davis that Plaintiff has no more than "mild" limitations in any functional area, to the extent that Dr. Davis' opinion conflicts with the opinion of examining psychologist Dr. Starkey that Plaintiff is limited to simple work; (4) the ALJ erred in assessing Plaintiff's RFC for a range of medium work involving "detailed but involved" written or oral instructions, as that assessment is not supported by the substantial evidence; and (5) the ALJ's errors are harmless because the substantial evidence in this case supports an RFC assessment for simple work, and the vocational expert identified unskilled work that the Plaintiff can perform. Therefore, the Court finds, for the reasons that follow, that Plaintiff's claims must fail.

As part of the disability determination process, the ALJ

is tasked with weighing the opinions and findings of treating, examining, and non-examining physicians.   In reaching a decision, the ALJ must specify the weight given to different medical opinions and the reasons for doing so.  See Winschel v. Commissioner of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011). The failure to do so is reversible error.  See Williams v. Astrue, 2009 U.S. Dist. LEXIS 12010, *4, 2009 WL 413541, *1 (M.D. Fla. 2009).

When weighing the opinion of a treating physician, the ALJ must give the opinions "substantial weight," unless good cause exists for not doing so.  Costigan v. Commissioner, Soc. Sec. Admin., 2015 U.S. App. LEXIS 2827, *10, 2015 WL 795089, *4 (11th Cir. Feb. 26, 2015) (citing Crawford v. Commissioner of Soc. Sec., 363 F.3d 1155, 1160 (11th Cir. 2004) and Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985)).  The opinion of "a one-time examining physician — or psychologist," on the other hand, is not entitled to the same deference as a treating physician.  Petty v. Astrue, 2010 U.S. Dist. LEXIS 24516, *50, 2010 WL 989605, *14 (N.D. Fla. Feb. 18, 2010) (citing Crawford, 363 F.3d at 1160).  An ALJ is also "required to consider the opinions of non-examining state agency medical and psychological consultants because they 'are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation.'"  Milner v. Barnhart,  275 Fed. Appx. 947, 948

(11th Cir. 2008) (unpublished) (citing 20 C.F.R. §
404.1527(f)(2)(i)). "The ALJ may rely on opinions of non-
examining sources when they do not conflict with those of
examining sources." Id. (citing Edwards v. Sullivan, 937 F.2d
580, 584-85 (11th Cir. 1991)).

Whether considering the opinions of treating, examining, or
non-examining physicians, good cause exists to discredit the
testimony of *any* medical source when it is contrary to or
unsupported by the evidence of record. Phillips v. Barnhart,
357 F.3d 1232, 1240 (11th Cir. 2004). "Good cause may also
exist where a doctor's opinions are merely conclusory,
inconsistent with the doctor's medical records, or unsupported
by objective medical evidence." Hogan v. Astrue, 2012 U.S.
Dist. LEXIS 108512, *8, 2012 WL 3155570, *3 (M.D. Ala. 2012).
The ALJ is "free to reject the opinion of any physician when the
evidence supports a contrary conclusion." Sryock v. Heckler,
764 F.2d 834, 835 (11th Cir. 1985) (per curiam) (citation
omitted); Adamo v. Commissioner of Soc. Sec., 365 Fed. Appx.
209, 212 (11th Cir. 2010) (The ALJ may reject any medical
opinion if the evidence supports a contrary finding.).

In the present case, the record shows that Plaintiff was
treated at the VA outpatient clinic from approximately January
2012 to August 2014, for various physical and mental health
issues, as well as for substance abuse. (Tr. 367-947, 1071-

1230).  With respect to his mental health treatment, Plaintiff was treated at the VA by psychiatrist, Dr. Seth Strauss, M.D., and clinical psychologist, Dr. Christine Aiken, Ph.D., for anxiety, PTSD, TBI, history of polysubstance abuse, and cognitive deficit,[10] for which he was given outpatient counseling and medication.  (Id. at 400-01, 412-13, 424-25, 438-39, 460-61, 477-84, 527-28, 550-56, 605, 675, 716-17, 742-43, 764-71, 783-84, 794-95, 802, 822).  Plaintiff's medical records reflect a significant number of mental status examinations with largely normal findings, as well as periods of time during which Plaintiff did not seek treatment or was non-compliant with appointments and medication.  (Id. at 76, 483, 520, 527, 553, 578, 605, 635, 723, 795, 802-03, 1059, 1078, 1089, 1135, 1213, 1220, 1227, 1229).  At no time did Dr. Strauss or Dr. Aiken assign any functional limitations to Plaintiff as a result of his mental conditions.

One notable exception to Plaintiff's otherwise conservative

---

[10] Cognitive testing conducted on May 17, 2012, suggested a lack of effort by Plaintiff, as opposed to actual cognitive deficit. (Tr. 683-84).  The tester noted that on the easy subtests, Plaintiff's score was worse than what is typically seen in persons institutionalized with dementia; yet, he scored much better than such individuals on the hardest subtest.  (Id. at 684).  Subsequent cognitive testing conducted in January 2014 revealed problems in the areas of immediate and delayed memory and attention; however, the tester noted that Plaintiff's episodes of dysfluencies (stuttering) were much improved and that his prognosis was "fair-good" with consistent attendance at therapy sessions.  (Id. at 1160-61).

treatment history occurred on February 28, 2014, when Plaintiff was admitted to an acute stabilization unit for treatment after an episode described as a "brief psychotic disorder."  (Id. at 1039, 1154).   Plaintiff's  medical  records  indicate  that  he became agitated while in the process of obtaining a compensation and pension examination and was taken by the police to the hospital.  (Id. at 1039, 1080-81, 1152-55).   Upon admission, Plaintiff was diagnosed with PTSD and opioid dependency and prescribed Zoloft.  (Id. at 1039, 1151).  He was discharged the same weekend, on March 2, 2014, with instructions to follow up with the VA.[11]  (Id.).

Three days later, on March 5, 2014, VA psychologist, Dr. Jennifer Jackson, Psy.D., examined Plaintiff and noted his recent diagnosis of psychotic disorder.  Dr. Jackson's notes indicate that Plaintiff was rambling and making nonsensical remarks during her examination and that she was "unclear as to the reason for his current psychosis."  (Id. at 1144, 1147-48). Dr. Jackson opined that Plaintiff's current psychosis resulted in a "total occupational and social impairment."  (Id. at 1144).

The following day, March 6, 2014, another VA physician, Dr.

---

[11] The record shows that one day prior to his psychotic episode, Plaintiff was seen at the VA by his treating psychologist, Dr. Aiken, who expressly noted that Plaintiff participated in his session and that "psychotic symptoms were not present."  (Tr. 1155-56).

Neela Mani, M.D., examined Plaintiff for purposes of evaluating his TBI, and her examination findings indicated that Plaintiff was able to communicate by spoken and written language, that he was able to comprehend spoken and written language, that he had no neurobehavioral effects, that his orientation was normal, that his motor activity was normal, that his social interaction was appropriate, that his judgment was normal, and that his memory, concentration, and attention were normal. (Id. at 1097, 1135-37).

Interestingly, the next day, March 7, 2014, VA psychiatrist, Dr. Anita Nusbaum, M.D., examined Plaintiff,[12] and in her mental status examination findings, she noted looseness of associations, rapid speech, and poor insight, judgment, and impulse control, but no observable impairment in attention or concentration. (Id. at 1095). Dr. Nusbaum diagnosed Plaintiff with mild "resolved" TBI, resulting in no functional limitations and no impact on his ability to work. Dr. Nusbaum also opined that Plaintiff had no diagnosable PTSD. (Id. at 1090, 1096). Dr. Nusbaum completed a Mental Disorders Questionnaire form wherein she noted Plaintiff's psychotic episode a few days earlier and opined that Plaintiff's unspecified "psychotic disorder" resulted in a "total occupational and social

---

[12] From a review of the record, it appears that this was the only instance in which Plaintiff was seen by Dr. Nusbaum.

impairment." (Id. at 1091-92). Dr. Nusbaum further opined that Plaintiff's unspecified psychotic disorder was not caused by military service but possibly was the result of "exposure to illicit substances," referencing his "post-military drug binge" and his untruthfulness about his substance abuse. (Id. at 1094-96).

One week later, on March 14, 2014, Plaintiff was examined at the request of the Agency by Dr. Kenneth Starkey, Psy.D. (Id. at 1029). From the outset, Dr. Starkey noted that Plaintiff smelled strongly of alcohol, although Plaintiff denied any history of alcohol use problems.[13] (Id. at 1030). Plaintiff reported his "presenting problem" as "brief psychotic disorders" because of PTSD and stated that he was also receiving treatment for back and neck problems related to disc problems.[14] (Id. at 1030-31). Plaintiff reported that he could manage all personal care needs without assistance, that he could manage his money,

---

[13] Dr. Starkey noted that Plaintiff's medical records revealed three prior DUI arrests and an arrest for public intoxication resulting in a reduction in rank in the Army and that Plaintiff had been required to attend a mandatory substance abuse treatment program while in the Army. (Tr. 1030).

[14] Plaintiff reported taking Alprazolam (for anxiety), Baclofen (a muscle relaxer), Cetirizine (an antihistamine), Divalproex (for migraines), Sulindac (an anti-inflammatory), Sumatriptan Succinate (for migraines), Tramadol (for pain), and Trazodone (an antidepressant). (Tr. 1030). Plaintiff reported that his medications were providing some relief of symptoms, and he denied having any undesirable side effects. (Id.).

prepare simple meals, shop, use a telephone, and meet his basic transportation needs (although his license was suspended for a DUI arrest in 2013). (Id.). Plaintiff reported receiving an honorable discharge from the Army.[15] (Id.).

Dr. Starkey's mental status examination revealed that Plaintiff had poor hygiene, bloodshot eyes, and that he smelled strongly of alcohol; Plaintiff's mood was irritable, and his motivation for completing the examination tasks was marginal; he was ambulatory without assistance; he was alert and oriented to person, place, time, day, date and purpose of the meeting; he was able to focus and sustain attention with no significant distraction; he accurately completed serial 3s and simple math problems and spelled "WORLD" backwards; his speech was clear and coherent and appropriate; his thinking was rational, with no deficits in reasoning or judgment, no delusional thoughts or paranoia, no tangential thinking, flight of ideas, or loosening of associations, and no anxiety; his estimated intelligence was average; he had an adequate ability to focus and sustain attention, although his short term memory appeared mildly impaired; and he had accurate recall, adequate fund of knowledge, and adequate insight and judgment. (Id.)

---

[15] The record indicates that Plaintiff was forced to leave the Army after misconduct involving alcohol abuse and a DUI arrest but that he received an honorable discharge. (Tr. 100, 1201-02).

Tests conducted on his intellectual functioning revealed a Full Scale IQ score of 93, reflecting an average range of intellectual functioning; and testing showed no clinically significant deficits for short term or long term memory. (Id. at 1032-36). Plaintiff's mood assessment was inconsistent, causing Dr. Starkey to question its validity. For example, Dr. Starkey noted that Plaintiff reported symptoms of PTSD but did not report any symptoms of depression. (Id. at 1036). Plaintiff's reported daily activities consisted of getting dressed, eating, watching television, listening to music, washing dishes, washing clothes, watching the dog, going to the store, going to the doctor, and going to church. (Id.).

Dr. Starkey diagnosed Plaintiff with Alcohol Use Disorder, Rule out PTSD mild.[16] (Id.). He listed Plaintiff's prognosis as "appears guarded" but unable to accurately assess because of Plaintiff's impaired condition (alcohol) and "marginal" motivation/lack of effort/cooperation. (Id. at 1037). Dr. Starkey opined that Plaintiff's symptoms could improve with more effective treatment of alcohol use problems. (Id.). He also noted that testing did not confirm any diagnosable neurocognitive disorder and opined that Plaintiff's ability to

---

[16] Dr. Starkey opined that it was impossible to evaluate Plaintiff's PTSD because of Plaintiff giving misleading information during the evaluation regarding his drinking. (Tr. 1037).

understand, remember and carry out simple/concrete instructions appears "good;" that his ability to work independently appears adequate especially for simple tasks; and that his ability to work with others (supervisors, coworkers, public) and to deal with work pressures appears marginal but could improve with treatment of his alcohol use problems. (Id.).

The following week, on March 24, 2014, State Agency psychologist, Dr. Donald E. Hinton, Ph.D., reviewed Plaintiff's records and completed a Mental RFC Assessment. In the assessment, Dr. Hinton opined that Plaintiff is not significantly limited in his ability to understand and remember locations or short and simple instructions and procedures, his ability to carry out very short and simple instructions, his ability to maintain regular attendance, his ability to sustain an ordinary routine without special supervision, his ability to work with others and to make simple work-related decisions, his ability to complete a normal work day and work week, and his ability to accept instructions and criticism from supervisors. (Id. at 107-09). He also opined that Plaintiff is moderately limited in his ability to understand, remember, and carry out detailed instructions, his ability to maintain attention and concentration for extended periods, his ability to interact appropriately with the general public, and his ability to respond appropriately to changes in the work setting. (Id.).

The record reflects that in the months following Plaintiff's brief (and only) psychotic episode in February 2014, he continued to receive routine treatment at the VA for his various physical and mental ailments.   Although Plaintiff continued to complain of anxiety and, on one occasion, exhibited incoherent speech,[17] at no time other than February 2014 was Plaintiff ever diagnosed with psychosis.   To the contrary, after February 2014, Plaintiff's physicians consistently noted improvement with medication and no symptoms of psychosis.   (Id. at 1055-61, 1067, 1069, 1071, 1078, 1081, 1220, 1225, 1228-30).

Specifically, on March 28, 2014, Plaintiff presented to the VA mental health clinic for a medication refill and reported "everything is going fine."   (Id. at 1083).   On April 28, 2014, Plaintiff reported that his medications were helping his mood. (Id. at 1067).   On May 1, 2014, Plaintiff's psychiatric examination findings reflected normal affect and mood, less anxiety, and improved attention.   (Id. at 1059, 1067).   On that same date, the VA issued Plaintiff an Apple Ipod as part of his

_____

[17] The Court notes that on one occasion, April 28, 2014, Plaintiff presented for counseling with Dr. Aiken, and Dr. Aiken noted increased anxiety and rambling speech with "delusional content." (Tr. 1073).   Dr. Aiken instructed Plaintiff to see Dr. Strauss on that same date to discuss changing his medication.   (Id.). Dr. Strauss examined Plaintiff and noted that he was "quite anxious" and "had difficulty expressing himself clearly (as is usual for him)," but that there was "no evidence of psychosis." (Id. at 1071).

therapy, and Plaintiff verbalized understanding of the instructions and demonstrated proper use of the device. (Id. at 1067). On May 28, 2014, and July 14, 2014, Plaintiff reported to Dr. Strauss that he had no complaints. (Id. at 1228, 1230). On June 19, 2014, Plaintiff's mother reported "no needs/concerns" at that time. (Id. at 1229). After missing his appointment with Dr. Aiken on August 11, 2014, Plaintiff reported, "I've been better, I've been worse." (Id. at 1220).

The record reflects that Plaintiff was a "no show" for his VA appointments on May 15, 2014, June 3, 2014, June 19, 2014, July 17, 2014, August 11, 14, and 28, 2014.[18] (Id. at 1220, 1228-29). These are the last VA treatment notes in the record.

On May 1, 2014, the VA issued a determination related to Plaintiff's claim for service related compensation. The VA assigned Plaintiff a 10% disability rating for degenerative joint disease in Plaintiff's cervical spine, a 10% disability rating for degenerative joint disease in Plaintiff's right shoulder, and a 10% disability rating for Plaintiff's TBI (claimed as speech problems, memory loss, headaches, and dizzy spells). (Id. at 1040-52). The VA denied Plaintiff's claim for

---

[18] The VA record dated July 18, 2004, reflects that Plaintiff exceeded the "no show" limits for the VA Speech Pathology Clinic, and as a result, Plaintiff was notified that recertification would be required before he would be readmitted. (Tr. 1227). Plaintiff also exceeded the "no show" limit for the VA Radiology department on July 8, 2014. (Id. at 1229).

PTSD and noted that Plaintiff sought no mental health treatment
while in the service and that the cause of any PTSD was likely
Plaintiff's "binge use of illicit drugs and abuse of alcohol."
(Id. at 1052).

On October 14, 2014, non-examining medical
expert/psychologist, Dr. John William Davis, Ph.D., testified at
Plaintiff's second administrative hearing that Plaintiff has a
problem with alcoholism and that, when intoxicated, all of his
limitations would be "marked" (id. at 75-78); that Plaintiff's
TBI, anxiety, and PTSD are not severe (id. at 77, 88); and that
there is no objective evidence of ADD (id. at 76). Dr. Davis
opined that in the absence of alcoholism, any limitations on
Plaintiff's judgment and his ability to handle routine changes
in the work place, understand, carry out, and remember
instructions and respond appropriately to coworkers,
supervisors, and work pressures are "mild." (Id. at 77).

Based on the record evidence, the undersigned finds that
the ALJ had good cause for rejecting the opinion of Dr. Nusbaum.
The ALJ found, and the record confirms, that the opinion of Dr.
Nusbaum set forth in the Mental Disorders Questionnaire form
completed on March 7, 2014, that Plaintiff's unspecified
psychotic disorder resulted in a "total occupational and social
impairment" (id. at 1090-92), was based primarily on her review
of the records of a single medical event that occurred the

23

preceding week [19] and is otherwise inconsistent with the substantial medical evidence in this case.[20]  (Id. at 1135-37).

As discussed above, the record shows that four days after Plaintiff's February 2014 psychotic episode (and one day before Dr. Nusbaum's examination), VA physician, Dr. Neela Mani, M.D., examined Plaintiff for purposes of evaluating any cognitive deficits caused by his TBI and found that he was able to communicate by spoken and written language, that he was able to comprehend spoken and written language, that he had no neurobehavioral effects, that his orientation was normal, that his motor activity was normal, that his social interaction was appropriate, that his judgment was normal, and that his memory, concentration, and attention were normal.  (Id. at 1097, 1135-37).

Dr. Nusbaum's opinion is also inconsistent with the findings of consultative examining psychologist, Dr. Starkey, who evaluated Plaintiff twelve days after his psychotic episode and reported that Plaintiff was able to focus and sustain

---

[19]  In fact, Dr. Nusbaum referred to Plaintiff's psychotic disorder as "current" and opined that it was not caused by his military service but by exposure to illicit drugs, referencing Plaintiff's "post-military drug binge."  (Tr. 1094-96).

[20]  Like Dr. Nusbaum, Dr. Jackson, Psy.D., also examined Plaintiff shortly after his single psychotic episode, and she too opined that Plaintiff's "current psychosis" resulted in total occupational and social impairment; however, as indicated above, this finding is at odds with the substantial record evidence.

attention and was alert and oriented, that his speech, thinking, reasoning, insight, judgment, focus, attention, language, hearing, vision, and motor function were normal, and that he had no anxiety. (Id. at 1030-33, 1035-36).  Dr. Nusbaum's opinion is inconsistent with Dr. Starkey's opinion that Plaintiff's ability to understand, remember and carry out simple/concrete instructions is "good" and that his ability to work independently is adequate especially for simple tasks.[21]  (Id. at 1037, 1092).

Dr. Nusbaum's opinion is also inconsistent with Plaintiff's routine treatment records from the VA. These records reflect that at no time other than February 2014 was Plaintiff ever diagnosed with psychosis.  To the contrary, after February 2014, Plaintiff's physicians consistently noted improvement with medication and no symptoms of psychosis.

In addition, Dr. Nusbaum's opinion is inconsistent with Plaintiff's reported activities of daily living which include taking care of his mother, taking care of his own personal needs, preparing meals, doing laundry and small chores, walking outdoors "as much as possible," having social activities "as

---

[21] Dr. Nusbaum's opinion that Plaintiff's "psychotic disorder" may have been caused by a "drug binge" (Tr. 1094-96) supports Dr. Starkey's opinion that Plaintiff's symptoms could improve with substance abuse treatment and contradicts Dr. Nusbaum's own opinion that Plaintiff is unable to work because of a total social and occupational impairment.  (Id. at 1037).

much as possible," going out alone, going to church, driving, shopping, handling all of his own finances, and reading instructions "easily." (Id. at 306-09, 1036). Based on the foregoing, the ALJ had good cause to reject Dr. Nusbaum's opinion because it was inconsistent with the substantial medical evidence in the case.

However, the ALJ's finding that Plaintiff retains the RFC to perform a range of medium work which would require him "to understand to carry out 'detailed but involved' written or oral instructions involving a few concrete variables in or from standardized situations" is problematic. (Id. at 24). Residual functional capacity is a measure of what Plaintiff can do despite his or her credible limitations. See 20 C.F.R. § 404.1545. Determinations of a claimant's residual functional capacity are reserved for the ALJ, and the assessment is to be based upon all the relevant evidence of a claimant's remaining ability to work despite his or her impairments, and must be supported by substantial evidence. See Beech v. Apfel, 100 F. Supp. 2d 1323, 1331 (S.D. Ala. 2000) (citing 20 C.F.R. § 404.1546 and Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)); Saunders v. Astrue, 2012 U.S. Dist. LEXIS 39571, *10, 2012 WL 997222, *4 (M.D. Ala. March 23, 2012). Once the ALJ has determined the Plaintiff's residual functional capacity, the claimant bears the burden of demonstrating that the ALJ's

decision is not supported by substantial evidence.  See Flynn v. Heckler, 768 F.2d 1273, 1274 (11th Cir. 1985).

Having reviewed the evidence in this case at length, the Court finds that the substantial evidence detailed above does not support the ALJ's conclusion that Plaintiff can perform work involving "*detailed* but *involved*" written and oral instructions. Simply put, the ALJ's finding in this regard conflicts with the opinion of examining psychologist Dr. Starkey that Plaintiff is limited to work involving only simple instructions and simple tasks.  The ALJ's finding also conflicts with the opinion of non-examining State Agency psychologist Dr. Hinton that, although Plaintiff is *not significantly limited* in his ability to understand and remember locations or *short and simple* instructions and procedures, his ability to carry out very *short and simple* instructions, his ability to maintain regular attendance, his ability to sustain an ordinary routine without special supervision, his ability to work with others and to make *simple* work-related decisions, his ability to complete a normal work day and work week, and his ability to accept instructions and criticism from supervisors, he is *moderately* limited in his ability to understand, remember, and carry out *detailed* instructions, his ability to maintain attention and concentration for extended periods, his ability to interact appropriately with the general public, and his ability to

27

respond appropriately to changes in the work setting (id. at 107-09). Thus, the ALJ erred in including "detailed" work in Plaintiff's RFC assessment.[22]

Nevertheless, although the ALJ erred in including "detailed" work in the Plaintiff's RFC assessment, the Court finds the error to be harmless. The record reflects that, at the administrative hearing, the ALJ posed a hypothetical question to the vocational expert which limited Plaintiff to simple work and another hypothetical question which limited Plaintiff to "detailed but uninvolved" written or oral instructions. In response to both questions, the vocational expert identified three *unskilled* jobs, namely, "hand packager," "kitchen helper," and "poultry farm laborer," as jobs which Plaintiff is capable of performing. (Id. at 90-92). Although in the RFC assessment the ALJ found that Plaintiff could engage in "detailed work," she listed the three *unskilled* jobs identified by the vocational expert in finding that Plaintiff is not disabled because there are jobs that exist in significant

---

[22] Additionally, the Court finds that, to the extent that the ALJ construed the opinion of non-examining medical expert Dr. Davis, that Plaintiff has no more than "mild" mental functional limitations, as supporting a finding that Plaintiff can understand and carry out "detailed but involved" instructions, the ALJ erred in relying on that opinion as it conflicts with the substantial record evidence, including the opinion of examining psychologist Dr. Starkey that Plaintiff is limited to work involving only *simple* instructions and *simple* tasks. See Milner, 275 Fed. Appx. at 948.

numbers in the national economy that Plaintiff can perform. (Id. at 31). Therefore, the ALJ's error in including "detailed" work in the RFC assessment was harmless. See Jones v. Commissioner of Soc. Sec., 492 F. Appx. 70, 73 (11th Cir. 2012) (failure to include a driving limitation in the hypothetical posed to the VE was harmless where the jobs identified by the VE could be performed without driving and, thus, did not affect the outcome of Plaintiff's case); see also Battle v. Astrue, 243 Fed. Appx. 514, 522 (11th Cir. 2007) (unpublished) (errors are harmless if they do not prejudice the claimant); Harper v. Colvin, 2015 U.S. Dist. LEXIS 15793, 2015 WL 540079, *6 (N.D. Ala. Feb. 10, 2015) ("Assuming arguendo that the ALJ did commit error by not including any mental limitations in his RFC finding, any such error was harmless because limitations based on the Plaintiff's mental impairment were included in the hypothetical presented to the VE," and the ALJ ultimately relied upon the jobs identified by the VE at step five of his decision); Sheehan v. Colvin, 2014 U.S. Dist. LEXIS 125155, *37 (M.D. Fla. Sept. 8, 2014) ("The Court finds that the ALJ erred in discounting the January, 2010 opinion of Dr. Gomes containing restrictions, but the error is harmless because there is VE testimony identifying other work that a hypothetical individual restricted to light work and simple, routine tasks could do, and that the work identified exists in significant numbers in the

national economy, given Plaintiff's RFC as corrected, age, education and work experience. A remand is not necessary."). Based on the foregoing, the Court finds that Plaintiff's claim is without merit.

### B. Whether the ALJ erred in failing to find Plaintiff's PTSD to be a severe impairment?

Last, Plaintiff argues that the ALJ erred in failing to find his PTSD to be a severe impairment. (Doc. 13 at 6-10). The Commissioner counters that the ALJ's finding that Plaintiff's PTSD is not severe is supported by substantial evidence, and that even if the ALJ erred in not identifying PTSD to be a severe impairment at step two of the sequential evaluation process, the error is harmless because the ALJ considered all of Plaintiff's impairments, including PTSD, during the subsequent steps of the inquiry. (Doc. 20 at 4-8). Having carefully reviewed the record in this case, the Court agrees that Plaintiff's claim is without merit.

In her decision, the ALJ found at step two of the sequential evaluation process that Plaintiff has the severe impairments of cervical spondylosis, degenerative joint disease of the right shoulder, late effects of traumatic brain injury vs. psychotic disorder including speech difficulties, headaches, anxiety, attention deficit hyperactivity disorder, memory loss, and alcohol dependence. (Tr. 21). The ALJ discussed the

evidence relating to Plaintiff's PTSD and determined that it was not a severe impairment. (Id. at 21-22).

The Court notes at the outset that the Commissioner is correct that, even if Plaintiff's PTSD were severe, the ALJ's failure to classify it as a severe impairment at step two of the sequential evaluation process is not fatal. See Bennett v. Astrue, 2013 U.S. Dist. LEXIS 115951, *14, 2013 WL 4433764, *5 (N.D. Ala. 2013) ("'[n]othing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe' and, even if the ALJ erred by not recognizing every severe impairment, the error was harmless since he found at least one such impairment."); Ferguson v. Astrue, 2012 U.S. Dist. LEXIS 139135, *25, 2012 WL 4738857, *9 (N.D. Ala. 2012) ("[B]ecause step two only acts as a filter to prevent non-severe impairments from disability consideration, the ALJ's finding of other severe impairments allowed him to continue to subsequent steps of the determination process and his failure to list headaches as severe does not constitute reversible error because, under the Social Security regulations, the ALJ at later steps considers the combined effect of *all* the claimant's impairments.") (emphasis in original).

Here, the ALJ found Plaintiff's cervical spondylosis, degenerative joint disease of the right shoulder, late effects of traumatic brain injury vs. psychotic disorder including

speech difficulties, headaches, anxiety, ADHD, memory loss, and alcohol dependence to be severe at step two and then proceeded on to the next steps where she considered all of Plaintiff's impairments in combination, including his PTSD.   (Tr. 24-30). Thus, the ALJ satisfied the requirements of the regulations.

Further, in order for an impairment to be severe, it must be more than a slight abnormality or a combination of slight abnormalities "that causes no more than minimal functional limitations."   20 C.F.R. § 416.924(c).   Indeed, it must "significantly limit[]" an individual's "ability to do basic work activities."   20 C.F.R. § 416.920(c).   "It is [the] Plaintiff's burden to prove the existence of a severe impairment, and she must do that by showing an impact on her ability to work."   Marra v. Colvin, 2013 U.S. Dist. LEXIS 105669, *13-14, 2013 WL 3901655, *5 (M.D. Fla. 2013) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)); see also Barnhart v. Thomas, 540 U.S. 20, 24 (2003) ("At step two, the SSA will find nondisability unless the claimant shows that he has a 'severe impairment,' defined as 'any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities.'") (quoting §§ 404.1520(c), 416.920(c)); McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986) ("Unless the claimant can prove, as early as step two, that she is suffering from a severe

impairment, she will be denied disability benefits.").

Here, Plaintiff has failed to satisfy his burden of proof with respect to the alleged severity of his PTSD. Although Plaintiff's medical records document a diagnosis and treatment for PTSD, none of his medical records indicates that his PTSD is severe and significantly limits his ability to do basic work activities.

To the contrary, Plaintiff's treatment records show very conservative treatment for his PTSD, consisting of medication and counseling.[23]  (Id. at 1058-67, 1071-79, 1166-67, 1172-73, 1205-09).  Plaintiff's medical records also show periods of no treatment whatsoever or non-compliance with treatment (id. at 76, 316, 1057, 1205, 1207, 1209, 1213, 1220), as well as frequent and consistent drug and alcohol abuse.  (Id. at 100, 437, 464, 740, 793, 810, 823, 830, 934, 1030, 1036, 1052, 1164, 1173, 1202, 1211).  Although Plaintiff's treating VA psychiatrist, Dr. Strauss, and treating psychologist, Dr. Aiken, diagnosed Plaintiff with PTSD, neither assigned any functional limitations from the condition.  (Id. at 1071, 1073-74). Moreover, VA psychiatrist, Dr. Nusbaum, who examined Plaintiff

---

[23] With the exception of Plaintiff's brief hospitalization in February 2014 for the psychotic episode that occurred during his compensation and pension examination with the VA (id. at 1039, 1154), his records reflect no hospitalizations or emergency room visits for any mental condition.

on March 7, 2014, after his brief psychotic episode, opined that he had no diagnosable PTSD.   (Id. at 1090, 1096).   In addition, the VA denied Plaintiff's claim for PTSD, noting that he sought no mental health treatment during his service and that the cause of any PTSD was likely his "binge use of illicit drugs and abuse of alcohol."   (Id. at 1052).

Further, consultative examining psychologist, Dr. Starkey, found Plaintiff's report of symptoms of PTSD to be inconsistent, noting that he did not report any symptoms of depression and that he gave misleading information regarding his drinking. (Id. at 1036-37).   Dr. Starkey diagnosed Plaintiff with Alcohol Use Disorder, Rule Out PTSD mild.   (Id. at 1036).   Also, medical expert/psychologist, Dr. Davis, testified at Plaintiff's administrative hearing that, based upon his review of Plaintiff's medical records, Plaintiff's PTSD was not severe. (Id. at 76-77).   In sum, none of Plaintiff's treating or examining physicians nor the non-examining psychological expert found any functional limitations attributable to Plaintiff's PTSD.

In light of this evidence, the ALJ did not err in determining that Plaintiff's PTSD did not significantly limit his ability to do basic work activities, and thus, is not a severe impairment.   Thus, Plaintiff's claim is without merit.

**V.    Conclusion**

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff's claim for a period of disability, disability insurance benefits, and supplemental security income be **AFFIRMED.**

**DONE** this **2nd** day of **August, 2016.**

                                                  **/s/ SONJA F. BIVINS**
                                    **UNITED STATES MAGISTRATE JUDGE**